UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF NEW YORK

UNITED STATES OF AMERICA,

Plaintiff,

-vs-

$8040.00 UNITED STATES CURRENCY,

Defendant.

DECISION & ORDER

21-CV-6323 (CJS)

This matter is presently before the Court on Plaintiff United States of America's ("the government") respective motions to strike a claim on the defendant currency, and for default judgment and an order of forfeiture. Mot. for Default J., Sept. 3, 2021, ECF No. 8; Mot. to Strike, Dec. 15, 2021, ECF No. 11. Claimant Cristal Starling ("Claimant") opposes the government's motion to strike. She states that the defendant currency was confiscated at her home during the execution of a search warrant related to the alleged drug activity of her former boyfriend, but that her former boyfriend was acquitted of all charges against him. Cl.'s Mem., Dec. 3, 2021, ECF No. 10. Therefore, she believes that she is entitled to return of the currency. *Id.* For the reasons set forth below, the government's respective motions to strike the claim [ECF No. 11] and for default judgment [ECF No. 8] are granted, Starling's claim [ECF No. 9] is stricken, and the defendant currency is forfeited to the government.

**BACKGROUND**

On April 16, 2021, the government filed a complaint for forfeiture of $8040.00 United States Currency ("defendant currency"), which was accompanied by a sworn declaration of James Gashlin, a Task Force Officer with the Drug Enforcement

Administration (DEA), who verified that the facts and circumstances alleged in the complaint are true to the best of his knowledge. Compl., Apr. 16, 2021, ECF No. 1. The allegations in the complaint and the declaration are uncontested, and therefore taken as true for the purposes of resolving this matter. *See, e.g., United States v. Fifty Thousand Six Hundred Ninety-Nine Dollars & Fifty Cents in United States Currency*, No. 19-CV-5408 (RPK), 2020 WL 8413547, at *1 (E.D.N.Y. June 16, 2020) (citing, *inter alia*, *Transatlantic Marine Claims Agency, Inc. v. Ace Shipping Corp.*, 109 F.3d 105, 108 (2d Cir. 1997)).

This case is an action *in rem* pursuant to 21 U.S.C. § 881(a)(6) for the forfeiture of the defendant currency, which was seized during the execution of a state search warrant at 466 ½ West Main Street, Apartment 401, in Rochester, New York on October 29, 2020. Compl. at ¶ 1. The search of the residence was part of an investigation of Kendrick Bronson, who was suspected of distributing cocaine and fentanyl in the Rochester area. Compl. at ¶ 4, 9. Present with Bronson at the Main Street apartment as the warrant was executed were Cristal Starling and a minor child. Compl. at ¶ 9. Among the items seized from the apartment were "$7,500 United States Currency from the top dresser drawer of the master bedroom, [and] $540 United States Currency from the pants pocket of a pair of women's jeans that were laying on the floor in the hallway adjacent to the master bedroom." Compl. at ¶ 10.

Substantial quantities of marijuana, fentanyl, powder cocaine, and crack cocaine were seized from a second residence, also linked with Bronson, which was searched at the same time as the Main Street apartment. Compl. at ¶ 13. Consequently, Bronson was arrested, charged, and indicted in New York state court on a number of drug offenses.

2

Compl. at ¶ 14. State charges were still pending against Bronson at the time the complaint was filed. *Id.*

On July 26, 2021, the government filed a certificate of service certifying that it had sent a notice of this forfeiture action and a copy of the complaint via FedEx to potential claimant Cristal Starling at 466 ½ West Main Street, Apartment 401 on June 14, 2021. Certificate of Service, Jul. 26, 2021, ECF No. 4. In addition, on August 20, 2021, the government filed a sworn declaration of publication, as well as an "Advertisement Certification Report," which stated that a notice regarding the pending civil forfeiture action for defendant currency was posted on the official internet government forfeiture site, www.forfeiture.gov, "for at least 30 consecutive days, beginning on July 20, 2021 . . . ." Not. of Publication, Aug. 20, 2021, ECF No. 5.

On August 24, 2021, the Clerk of Court signed and docketed an entry of default of the defendant currency. Entry of Default, Aug. 24, 2021, ECF No. 7. The government then moved the Court for an order of default judgment and an order of forfeiture against the defendant currency, stating that the government had satisfied all requirements of Rule 55 of the Federal Rules of Civil Procedure, and the Supplemental Rules for Admiralty of Maritime Claims and Asset Forfeiture Actions ("Supplemental Rules"). Mot. for Default J., Sept. 3, 2021, ECF No. 8.

Nearly three months after the entry of default, but before the Court ruled on the government's motion for default judgment, Claimant filed a claim on the defendant currency. Claim, Nov. 30, 2021, ECF No. 9. In the claim, Claimant stated that she resided at 466 ½ West Main Street, Apartment 401, in Rochester, New York, and requested that the defendant currency be returned to her because Kendrick Bronson had been acquitted

of all charges related to the defendant currency. *See* Claim, ECF No. 9; Certificate of Service, ECF No. 8-26. In the memorandum accompanying her claim, Claimant indicated she was "fil[ing] an answer to a settlement offer made by US district attorney Grace Carducci in regards to" the defendant currency. Cl.'s Mem. in Supp., ECF No. 10 at 1. She stated that Ms. Carducci's associate had contacted her on November 2, 2021 to offer a settlement of half the defendant currency, but that Claimant "ha[d] been advised that due to all charges being thrown out [against Bronson] . . . any property confiscated . . . should be returned to its rightful owner." *Id.* at 1. In other words, Claimant declined the alleged settlement offer, and instead sought return of the full amount of defendant currency on the grounds that Bronson had not been found guilty of criminal conduct.

Thereafter, the government filed a motion to strike the claim. Mot. to Strike, Dec. 15, 2011, ECF No. 11. In an affidavit filed in support of the motion to strike, Assistant United States Attorney ("AUSA") Grace Carducci maintained that the claim must be stricken because, pursuant to Rule G(4) of the Supplemental Rules, "[h]aving been given direct notice of this action on June 14, 2021, [Claimant]'s claim was due on July 16, 2021." Aff. in Supp., ¶ 6, Dec. 15, 2021, ECF No. 11.

In response, Claimant stated:

I have done everything that was asked of me to make a claim to my currency since day it was confiscated. These actions include filing a petition to the Department of Justice on December 17, 2020. Petitioner# -209S-11A-2AA-2E9 and a claim on January 15, 2021. Claim number# -210F-83F-633-B62. These actions were taken in response to correspondence received to do so in a timely manner.

In addition to these filings, I contacted and followed the advice of the district attorney presiding over the case that resulted in these monies being confiscated several times. I was told that there would be no release of funds until the case was closed. The defendant in said case was acquitted of all charges on November 17, 2021 and as a result I am following up to get my

currency returned to me.

Cl.'s Resp., Jan. 4, 2022, ECF No. 14.

In reply to Claimant's response, the government submitted an affidavit from AUSA Carducci, as well as affidavits from Monroe County (NY) Assistant District Attorneys ("ADAs") Jonathan Jirik and Eleanor Biggers. Gov't. Reply, Jan. 7, 2022, ECF No. 15. AUSA Carducci acknowledged that Claimant "filed an administrative claim with the Drug Enforcement Agency ('DEA') on January 15, 2021." *Id.* at ¶ 4. However, she also maintained that "the filing of an administrative claim with the DEA does not satisfy the verified claim obligation of" Rule G(5) of the Supplemental Rules. *Id.* AUSA Carducci further argued that Claimant's "assertion that she communicated with and relied on the 'advice of the district attorney presiding over the case,' is controverted by the affidavit of [ADA] Jonathan Jirik," and that ADA Eleanor Biggers "does not recall having any contact with" Claimant. Reply at ¶ 8. The affidavits of ADAs Jirik and Biggers support AUSA Carducci's statements. Reply Ex. 1 (Jirik), Jan. 7, 2022, ECF No. 15-1; Reply Ex. 2 (Biggers), Jan. 7, 2022, ECF No. 15-2.

On January 11, 2022, Claimant submitted a letter to the Court that the Court will consider as a supplemental response to the government's motion to strike. *See, e.g.,* *McLeod v. Jewish Guild for the Blind*, 864 F.3d 154, 156–57 (2d Cir. 2017) (quoting *Abbas v. Dixon*, 480 F.3d 636, 639 (2d Cir. 2007) ("The policy of liberally construing *pro se* submissions is driven by the understanding that implicit in the right to self-representation is an obligation on the part of the court to make reasonable allowances to protect *pro se* litigants from inadvertent forfeiture of important rights because of their lack of legal training."). In her supplemental response, Claimant states that it was "impossible" to have

received direct notice of the claim sent on June 14, 2021 because she "was vacationing in Las Vegas at [that] time," and she has attached an itinerary and receipts to support that statement. Cl.'s Supp. Resp., 1, Jan. 11, 2022, ECF No. 17.

Claimant also identified two occasions on which she alleges she spoke with ADA Biggers. Claimant states that she first spoke with ADA Biggers on November 16, 2020, when ADA Biggers called to notify Claimant that she "had signed off on the release of authorization for [Claimant's] vehicle from the City auto pound." *Id*. at 2. Claimant acknowledges that ADA Biggers "was very adamant . . . [that the defendant currency] would not be released." *Id.* Claimant states that she spoke with ADA Biggers a second time on November 20, 2020, when ADA Biggers called to notify Claimant that she had signed off on the release of a second vehicle. *Id.* When Claimant again asked ADA Biggers about the defendant currency, ADA Biggers directed Claimant to contact an attorney to answer her questions about the defendant currency. *Id.* Based on the foregoing, Claimant asks the Court to consider that her "attention to this matter has always been unyielding and unfaltering. [She has] responded to every correspondence received to make a claim to [her] money and [has] provided information that supports the truth of these matters." *Id.*

### STANDARDS OF LAW

The procedures applicable to this forfeiture action pursuant to 21 U.S.C. § 881(a)(6) are governed by the Supplemental Rules for Admiralty or Maritime Claims and Asset Forfeiture Actions ("Supplemental Rules"). *See* 21 U.S.C. § 881(b); 18 U.S.C. § 983; *United States v. $27,601.00 U.S. Currency*, 800 F. Supp.2d 465, 467 (W.D.N.Y. 2011) (citation omitted). The Federal Rules of Civil Procedure also apply to such

proceedings, to the extent that they do not conflict with the Supplemental Rules. Supp. R. A(2).

When the government brings a civil forfeiture action *in rem*, it must file a verified complaint setting forth, *inter alia*, allegations identifying the property, and the factual and statutory basis for its seizure. *See* Supp. R. G(2). The government must also provide notice of the action to anyone who reasonably appears to be a potential claimant. Supp. R. G(4)(b). To contest the forfeiture, a claimant must file a claim in the court where the action is pending, and within the time specified in the government's notice. *See* Supp. R. G(5)(a) and 4(b)(ii)(B). Though a court has discretion in appropriate circumstances to set a different time for "good cause," strict compliance with these deadlines is typically required. Supp. R. G(5)(a)(ii); *United States v. Amiel*, 995 F.2d 367, 371 (2d Cir. 1993) (discussing Supp. R. C(6), which also deals with responsive pleadings for *in rem* actions). Within twenty-one days after filing a claim, the claimant must file an answer. Supp. R. G(5)(b).

"In order to contest a governmental forfeiture action, claimants must have both standing under the statute or statutes governing their claims and standing under Article III of the Constitution as required for any action brought in federal court." *United States v. $541,395.06 U.S. Currency*, No. 10-CV-6555-CJS, 2012 WL 3614294, at *2 (W.D.N.Y. Aug. 21, 2012) (quoting *United States v. Cambio Exact, S.A.*, 166 F.3d 522, 526 (2d Cir. 1999)). Article III standing relates to the claimant's ability to demonstrate an interest in the seized property that is sufficient to satisfy the case or controversy requirement of Article III. *United States v. 8 Gilcrease Lane*, 641 F. Supp.2d 1, 5 (D.D.C. 2009) (citation omitted). Statutory standing relates to a claimant's ability to demonstrate compliance with

the statutory and procedural requirements imposed by Congress. *Id*. "[U]nder the Supplemental Rules, the government may move to strike a forfeiture claim at any time before trial for failure to comply with Rule G(5) or for lack of standing." *$27,601.00 U.S. Currency*, 800 F. Supp.2d at 467 (quoting *United States v. $12,126.00 in United States Currency*, 337 F. App'x 818, 820 (11th Cir. 2009)) (internal quotation marks omitted).

## MOTION TO STRIKE

The government argues the claim in this case should be stricken for lack of statutory standing. In particular, the government maintains that the claim must be stricken because Claimant failed to file her claim within the time allowed by Rule G(5)(a)(ii) of the Supplemental Rules, and has not shown excusable neglect. Aff. in Supp. at ¶ 5–6, ECF No. 15. Moreover, although the government acknowledges that Claimant did file an administrative claim with the DEA in January of 2021, the government states that the claim with the DEA was "not a judicial claim and the filing of an administrative claim with the DEA does not satisfy the verified claim obligation of" Rule G(5) of the Supplemental Rules. *Id.* at  ¶ 4.

In response, Claimant indicates that she never received notice of this *in rem* action because she was on vacation in Las Vegas at the time the government served her with direct notice. Cl.'s Supp. Resp. at 1, ECF No. 17. Further, she maintains that "her attention to this matter has always been unyielding and unfaltering," and that she has "responded to every correspondence received to make a claim." *Id.* at 1–2.

As Claimant filed her claim on November 30, 2021 – more than three months after the final day of the government's publication of the arrest warrant on www.forfeiture.gov, and more than five months after the government sent Claimant direct notice via FedEx –

it is indisputable that Claimant filed her claim well beyond the deadlines set for *in rem* forfeiture actions by the Supplemental Rules. Nevertheless, Courts must "liberally construe pleadings and briefs submitted by *pro se* litigants, reading such submissions to raise the strongest arguments they suggest." *McLeod*, 864 F.3d at 156–57 (2d Cir. 2017) (quoting *Bertin v. United States*, 478 F.3d 489, 491 (2d Cir. 2007)). Accordingly, reading Claimant's submissions to raise the strongest arguments they suggest, the Court construes Claimant's opposition to the government's motion to strike to be, in effect, a motion for a retroactive extension of time to file her verified claim.

Legal Principles

Courts in this circuit "routinely strike claims in federal forfeiture actions where a claimant fails to comply with the deadlines provided by the [Supplemental] Rules . . . . [but] ha[ve] the discretion to excuse a missed deadline if the claimant can show 'excusable neglect.'" *United States v. $541,395.06 U.S. Currency*, No. 10-CV-6555-CJS, 2012 WL 3614294, at *3 (W.D.N.Y. Aug. 21, 2012) (citations omitted). The Supreme Court has stated that the determination of whether a claimant has shown "excusable neglect" is "at bottom an equitable one, taking account of all relevant circumstances surrounding the party's omission." *Pioneer Inv. Services Co. v. Brunswick Assoc. Ltd. Partnership*, 507 U.S. 380, 395 (1993). "An analysis of excusable neglect requires the Court to examine four factors including: the danger of prejudice to the non-movant, the length of the delay and its impact on proceedings, the reason for the delay including whether it was within the reasonable control of the movant, and whether the movant acted in good faith." *$541,395.06 U.S. Currency*, 2012 WL 3614294 at *3. Among these four factors, the Second Circuit has focused particularly on the reason for delay, because "the equities will rarely if ever favor a party who 'fail[s] to follow the clear dictates of a court

rule' and . . . where 'the rule is entirely clear, we continue to expect that a party claiming excusable neglect will, in the ordinary course, lose under the *Pioneer* test.'" *Id.* at *4 (quoting *Silivanch v. Celebrity Cruises, Inc.*, 333 F.3d 355, 366–67 (2d Cir.2003)).

Application

With respect to Claimant's first argument, the Court finds no excusable neglect based on Plaintiff's claim that she never received the direct notice of the government's complaint because she was on vacation in Las Vegas. Supplemental Rule G(4)(b)(iii)(A) requires only that the government "send notice of the action . . . to a [known] potential claimant . . . by means reasonably calculated to reach the potential claimant." *United States v. Twenty-Four Cryptocurrency Accts.*, 473 F. Supp.3d 1, 6 (D.D.C. 2020) (noting that the government had also posted notice on forfeiture.gov for 30 days). Here, the government has introduced evidence certifying that it sent notice via FedEx to Claimant at 466 ½ West Main Street, Apartment 401, which is the address from which the property was seized and which Claimant admits to be her current residence. There is no suggestion by either party that this notice was returned to the government, or that the government was otherwise informed that the notice was undeliverable. The government therefore satisfied its notice obligation, and Claimant's argument in this respect is unpersuasive. *See Twenty-Four Cryptocurrency Accts.*, 473 F. Supp.3d at 6 (quoting *Mesa Valderrama v. United States*, 417 F.3d 1189, 1197 (11th Cir. 2005)) ("Reasonable notice . . . requires only that the government attempt to provide actual notice; it does not require that the government demonstrate that it was successful in providing actual notice.").

Neither is the Court persuaded by Claimant's argument that her time to file a claim ought to be extended due to her diligence in her attempts to recover the defendant

currency. As noted above, the Second Circuit has stated that "the equities will rarely if ever favor a party who 'fail[s] to follow the clear dictates of a court rule' and . . . where 'the rule is entirely clear, we continue to expect that a party claiming excusable neglect will, in the ordinary course, lose . . . .'" *United States v. $10,300.00 U.S. Currency*, No. 10-CV-6103-CJS, 2013 WL 5705083, at *4 (W.D.N.Y. Oct. 17, 2013) (quoting *Silivanch*, 333 F.3d at 366–367). In the present case, Claimant has failed to demonstrate that her diligence, such as it was, was in accordance with well-settled laws, rules and procedures regarding the filing of claims in a civil forfeiture action.

With respect to Claimant's purportedly diligent efforts, Claimant states that she twice inquired about the defendant currency when she was in contact with ADA Biggers in November 2020, that she filed a petition with the Department of Justice in December 2020, and that she filed a claim with the DEA in January 2021. In the first place, Claimant admits that in her conversations with ADA Biggers, ADA Biggers encouraged her to seek the advice of legal counsel regarding her options for pursuing the recovery of defendant currency. Cl.'s Supp. Resp. at 2, ECF No. 17. The Court recognizes that Claimant's lack of training in the law is a disadvantage to her knowledge of the civil forfeiture rules, but Claimant's decision not to seek an attorney's advice was a matter "within [her] reasonable control," which weighs against a finding of excusable neglect. *Silivanch,* 333 F.3d at 366. Moreover, "inadvertence, ignorance of the rules, or mistakes construing the rules do not usually constitute 'excusable' neglect." *Pioneer Inv. Servs. Co.*, 507 U.S. at 392.

Additionally, 18 U.S.C. § 983 plainly outlines the process for litigating a claim once an administrative claim is filed for seized property subject to forfeiture, such as Claimant's claim with the DEA in the present case. Specifically, 18 U.S.C. § 983(a)(3) and (4) make

clear that once the administrative claim is filed for seized property, the government must then file a complaint with the district court for the forfeiture of the property, and the claimant must file his or her claim in that same court proceeding pursuant to the Supplemental Rules. Similarly, the Supplemental Rules are clear about the government's notice requirements, as well as the steps that a person asserting an interest in the seized property must take to file his or her claim. Supp. R. G(5).

In short, Claimant has not presented any reasons that would prompt the Court to dispense with the general rule and the statutory procedural requirements. *See also United States v. $5,227.00 U.S. Currency*, No. 12-CV-6528, 2013 WL 2450733, at *1 (W.D.N.Y. June 5, 2013). Accordingly, the Court finds that Claimant has failed to demonstrate that she has statutory standing to contest this forfeiture action, and that she has failed to offer a sufficient basis for a finding of excusable neglect. The government's motion to strike the claim as late [ECF No. 11] is therefore granted.

## MOTION FOR DEFAULT JUDGMENT

The government also moves the Court for default judgment under Rule 55 of the Federal Rules of Civil Procedure. As stated in Rule 55 of the Local Rules of Civil Procedure of the United States District Court for the Western District of New York:

> The procedure for Default Judgment under Fed.R.Civ.P. 55 is a two-step process: (a) entry of default by the Clerk of Court (Fed.R.Civ.P. 55(a)); and (b) entry of default judgment, by the Clerk of Court when the claim is for a sum certain pursuant to Fed.R.Civ.P. 55(b)(1) and by the Court in all other instances pursuant to Fed.R.Civ.P. 55(b)(2) . . . .

L.R.Civ.P. 55. Further, L.R.Civ.P. 55(b)(2) requires that "[a]n application to the Court for the entry of a default judgment, pursuant to Fed.R.Civ.P. 55(b)(2), shall reference and include the docket numbers of the Clerk's Entry of Default and the pleading to which no

response has been made."

Upon review of the government's motion for default judgment, the Court finds that the government has satisfied all of the requirements of both Fed.R.Civ.P. 55 and L.R.Civ.P. 55. Accordingly, the government's motion for default judgment is granted.

## CONCLUSION

For the reasons stated above, it is hereby

ORDERED that the government's motion [ECF No. 11] to strike the claim of Cristal Starling is granted; and it is further

ORDERED that the government's motion [ECF No. 8] for default judgment is granted; and it is further

ORDERED that the defendant $8040.00 United States currency is forfeited to the United States of America pursuant to 21 U.S.C. § 881(a)(6), and any claims to the defendant currency are forever barred.

.

IT IS SO ORDERED.

Dated: February 3, 2022
        Rochester, New York

                ENTER:

                CHARLES J. SIRAGUSA
                United States District Judge

13