UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF NEW YORK

_____

UNITED STATES OF AMERICA,

                        Plaintiff,

v.

$8,040.00 UNITED STATES CURRENCY,

                        Defendant.

_____

No. 6:21-cv-06323-CJS

**MEMORANDUM OF LAW ON DISMISSAL AND CLAIMANT'S ENTITLEMENT TO ATTORNEYS' FEES**

## Introduction

Following the government's filing of a notice of voluntary dismissal (Doc. 27), this Court held a status conference on December 14, 2023. The Court directed Claimant Cristal Starling to file a brief discussing (1) whether the dismissal of this case should be with or without prejudice, and (2) whether, in either case, Claimant is entitled to attorneys' fees and costs under CAFRA. (Doc. 34). Following that conference, the government on December 22, 2023, moved to dismiss this case without prejudice. (Doc. 36). This memorandum of law is Claimant's combined response to the government's initial notice of voluntary dismissal, this Court's order, and that motion.

As explained below, after more than two years of litigation and the government's return of the $8,040 it seized from Ms. Starling, this Court should dismiss this case with prejudice and hold that Ms. Starling is entitled to fees as a substantially prevailing party under CAFRA.

1

First, the government is not entitled to voluntary dismissal because Federal Rule of Civil Procedure 41(a)(1)(A)(i) allows a plaintiff to dismiss an action without a court order only by filing a notice *before* the opposing party serves an answer or a motion for summary judgment. Here, however, Claimant Cristal Starling filed an answer more than two years ago, a fact confirmed by the government's sworn testimony. *See* Affidavit in Support of Motion to Strike Cristal Starling's Late Claim & Answer (Doc. 11) at ¶ 10 ("On or about December 3, 2021, Starling filed an answer."); *see also* Affidavit in Supp. of Mot. to Dismiss without Prejudice (Doc. 36) at ¶ 6 ("On or about December 15, 2021, the government filed a motion to strike the late claim and answer."). This Court should thus strike the government's notice of voluntary dismissal.

Second, this Court should also deny the government's motion requesting that this case be dismissed without prejudice. Ms. Starling is entitled to dismissal *with* prejudice under either of the tests that this Circuit has employed to determine when dismissal without prejudice would be improper. That is particularly true because of the plain legal prejudice Ms. Starling would suffer if the government remained free to refile this forfeiture action in the future. Not only would the threat of that litigation leave Ms. Starling in limbo, under the prevailing rule that courts have adopted it would also deprive her of the opportunity to pursue attorneys' fees, costs,

and interest following her victory before the Second Circuit.[1] That result cannot be permitted. This case should be dismissed with prejudice.

Third, because this case should be dismissed with prejudice, this Court should also hold that Ms. Starling is a substantially prevailing party under CAFRA. To be a prevailing party it is not necessary to have a final determination on the merits. All that is necessary is a court-ordered change to the legal relationship of the parties that provides some relief. An order dismissing this case *with* prejudice satisfies that standard, because it would ensure that the government can never again seek forfeiture of Ms. Starling's money.

Finally, even if this Court believes that dismissal without prejudice is appropriate, this Court should still hold that Ms. Starling is a substantially prevailing party under CAFRA. Although Claimant acknowledges that the majority view of courts cuts the other way, that view conflicts with both the text and statutory history of CAFRA. Congress intentionally chose to award fees, costs, and interests to parties who "substantially prevail," a category of litigants broader than the "prevailing party" analysis applicable to other fee-shifting statutes. The majority approach not only conflicts with this text and history, but also leads to absurd results and creates perverse incentives for the government.

---

[1] As explained in detail in Section IV, below, Claimant disputes this interpretation of CAFRA and argue that claimants in civil-forfeiture proceedings may recover fees and interest under CAFRA even when they prevail due to the government's voluntary dismissal of those proceedings without prejudice.

**Argument**

**I.    The Government Is Not Entitled to Voluntary Dismissal Because Claimant Starling Has Already Filed an Answer.**

If a plaintiff wishes to dismiss an action without a court order, they may do so by filing "a notice of dismissal before the opposing party serves . . . an answer." Fed. R. Civ. P. 41(a)(1)(A)(i). But the government cannot avail itself of this method here, because at all stages of this litigation, Claimant Cristal Starling, the government, and this Court have characterized and treated Ms. Starling's pro se filing of December 3, 2021, as an answer to the government's complaint seeking forfeiture of Ms. Starling's money. Indeed, that characterization was required under Circuit precedent holding that pro se filings like Ms. Starling's must be liberally construed to raise the "strongest arguments that they suggest." *Barnes v. City of New York*, 68 F.4th 123, 127 (2d Cir. 2023) (citation omitted). Having treated Ms. Starling's filings as an answer throughout this litigation, the government is equitably estopped from recharacterizing it now. Thus, this Court should strike the government's notice of voluntary dismissal.

**A.    Claimant Starling, the Government, and this Court all characterized Ms. Starling's December 3, 2021 filing as an Answer.**

Before the government filed its notice of voluntary dismissal, everyone had agreed that Ms. Starling had already filed an answer. Ms. Starling's filing itself is explicit. The certificate of service attached to that document describes the filing as an "'Answer' to Settlement Offer of $4,020." Answer (Doc. 10) at 2 ("Answer"). The first sentence of the document also refers to its being an "answer," and the

document disputes the government's entitlement to keep Ms. Starling's money, as one would expect in an answer. *See* Answer at 1. As explained in more detail in Section B, below, under the liberal standards for interpreting pro se filings, this was enough to make Ms. Starling's filing an answer.

The government shared this understanding of Ms. Starling's filing. The titles of its motion to strike, the affidavit in support of that motion, and the memorandum of law in support of that motion all refer to Ms. Starling's "Late Claim and Answer." (Doc. 11 at 1, 3, & 7). In all three of those documents, the government explicitly and repeatedly described Ms. Starling's December 3, 2021 filing as an answer. *See, e.g.*, Mot. to Strike at 1 ("The United States of America . . . respectfully moves this Court to Strike the Late Claim and Answer filed by Cristal Starling . . . ."); Aff. in Supp. of Mot. to Strike at ¶ 10 ("On or about December 3, 2021, Starling filed an answer."); Mem. of Law in Supp. of Mot. to Strike at ¶ 5 ("Starling filed a late claim on November 30, 2021 and an answer on December 3, 2021.").

This Court, too, shared that understanding. In its order granting the government's motion to strike Ms. Starling's filings, this Court specifically observed that Ms. Starling characterized the December 3, 2021 letter as an answer, citing directly to the text of that letter. *See* Order Granting Mot. to Strike (Doc. 18) at 4 ("In the memorandum accompanying her claim, Claimant indicated she was filing an answer to a settlement offer made by US district attorney Grace Carducci in regards to the defendant currency." (cleaned up)).

**B. This Circuit's rules for interpreting pro se filings required that Claimant Starling's December 3, 2021 filing be construed as an Answer.**

To be sure, Ms. Starling's pro se answer did not take the form it would have taken if it had been prepared by an attorney; it does not, for example, provide individually numbered responses to the paragraphs of the government's complaint. But this is immaterial. As the Second Circuit in this very case noted, "[i]mplicit" in the right of self-representation "is an obligation on the part of the court to make reasonable allowances to protect *pro se* litigants from inadvertent forfeiture of important rights because of their lack of legal training." *United States v. Starling*, 76 F.4th 92, 99 (2d Cir. 2023). Thus, "*pro se* submissions are reviewed with 'special solicitude' and 'must be construed liberally and interpreted to raise the strongest arguments that they suggest.'" *Barnes v. City of New York*, 68 F.4th 123, 127 (2d Cir. 2023) (quoting *Triestman v. Fed. Bureau of Prisons*, 470 F.3d 471, 474–75 (2d Cir. 2006)).

New York federal courts applying that principle have construed similar letter responses to complaints as answers. In *Bravado International Group Merchandising Services, Inc. v. Ninna, Inc.*, for example, the Eastern District of New York refused to grant default judgment against a pro se defendant who had responded to a trademark complaint with an unsigned letter. 655 F. Supp. 2d 177, 186–87 (E.D.N.Y. 2009). Like Ms. Starling's December 3, 2021 filing, this answer

"[did] not meet the requirements of a proper responsive pleading." *Id.* at 186.[2] Yet even though "the document [did] not admit or deny every allegation in the Complaint, it clearly communicate[d] [defendant's] intent to deny plaintiffs' claim." *Id.* at 187. Thus, the court rejected plaintiff's argument to construe the document as a response to the plaintiff's motion for preliminary injunction, construed it instead as an answer, and denied the plaintiff's motion for default judgment. *Id.* at 187–88.[3]

---

[2] The document read as follows (all spelling errors in original):

> Ninna inc,
>
> To whom it may concern,
>
> Hi can you please look over all the documents which they say they have the rights on, if you look at the Years and dates its not matching and it dosent made sence that they have right from 20 to 30 years licensing. licensing must be renewed evry year. they must provide proof of art work and registerd date year and copyrights. another question is, if there lawyer from California has the rights to come to our place and do a search and mess up all my office papers and boxes and all other items. if he has the rights to do that why don't he come to court in New York, but he is on the phone in court, this does not make any sence. And please I want them to bring all the boxes screens and stuff that they took from us to court, And I wanna see proof of all the right which they say they have of all this bands.

*Bravado*, 655 F. Supp. 2d at 186–87. Following this paragraph was a list of bands and attached were several trademark records retrieved from the U.S. Patent and Trademark Office website for marks at issue in the lawsuit. *Id.* at 187.

[3] This construction is also consistent with the Second Circuit's construction of claimant's letters. *See United States v. Starling*, 76 F.4th 92, 99 (2d Cir. 2023). The Second Circuit affirmed this Court's construction of the letters as a motion to file an untimely claim, observing that "the letters plainly communicate a claim to the seized funds." *Id.* But the Second Circuit held that the letters *also* had to be construed as a motion to lift the entry of default, because they "*also* communicate a desire to move forward with court proceedings." *Id.* (emphasis added) (marks omitted). The letters *also* communicated a response to the government's allegations—namely, a denial—and thus *also* had to be construed as an answer.

The same principles apply here. Ms. Starling's December 3, 2021 filing clearly communicated her intent to deny the government's claim to her money. It stated, among other things:

- "There was nothing illegal found in my home at all, yet my money was confiscated."

- "I would like to move forward with court proceedings to have all of the funds returned to me promptly."

- "The charges that stemmed from the execution of the search warrant for Mr. Bronson [have] since been dismissed based on Acquittal of all matters in the City court of Rochester NY. I have been advised that due to all charges being thrown out and legal proceedings ceased, any property confiscated during the legal process should be returned to its rightful owner."

Answer at 1.

Under the liberal standards by which pro se filings are evaluated, this was enough.

### C. After two years of litigation, the doctrine of judicial estoppel precludes the government from recharacterizing Claimant Starling's Answer as something else.

Though the government was happy to construe Ms. Starling's December 3, 2021 filing as an answer when seeking to have that filing struck as untimely, the government has changed its tune now that it wishes to voluntarily dismiss this case without first obtaining this Court's leave. In an affidavit filed on December 22, 2023, the government now describes Ms. Starling's filing as a "memorandum/brief in support of her claim" and claims that it is entitled to voluntary dismissal under Rule 41(a)(1)(A) because "no proper answer was filed in this matter." *See* Affidavit in Supp. of Mot. to Dismiss without Prejudice ¶¶ 5, 11 (Doc. 36). But under the equitable doctrine of judicial estoppel, the government should be prohibited from

recharacterizing Ms. Starling's answer as something else now that it suits them to do so, particularly considering the prejudice that Ms. Starling would face if the government were free to refile this case.

Under the doctrine of judicial estoppel, "[w]here a party assumes a certain position in a legal proceeding, and succeeds in maintaining that position, he may not thereafter, simply because his interests have changed, assume a contrary position, especially if it be to the prejudice of the party who has acquiesced in the position formerly taken by him." *New Hampshire v. Maine*, 532 U.S. 742, 749 (2001). Because the doctrine is an equitable one, the Supreme Court has eschewed "inflexible prerequisites or an exhaustive formula for determining the applicability of judicial estoppel." *Id.* at 751. But courts applying the doctrine "generally look for the existence of three factors: (1) that a party's new position is clearly inconsistent with its earlier position, (2) that the party seeking to assert this new position previously persuaded a court to accept its earlier position, and (3) that the party would derive an unfair advantage or impose an unfair detriment on the opposing party if not estopped." *Intellivision v. Microsoft Corp.*, 484 F. App'x 616, 619 (2d Cir. 2012) (cleaned up).[4]

---

[4] Some earlier Second Circuit precedent suggested that judicial estoppel applied only in separate legal proceedings and could not be applied to different phases of the case, but "[t]his has not been the law in the Second Circuit for some time." *MedPricer.com, Inc. v. Becton, Dixon & Co.*, No. 3:13-cv-1545, 2017 WL 1234102, at *3 n.4 (D. Conn. Apr. 3, 2017) (citing *Intellivision,* 484 F. App'x at 621 ("Contrary to plaintiffs' claims, our Court, like the Supreme Court, has recognized that a prior inconsistent representation made in a prior phase of the same case can trigger judicial estoppel.")).

These factors are satisfied here. The government's assertion that Ms. Starling has not filed an answer conflicts with its sworn testimony that her December 3, 2021 filing was an answer. This court also relied on those factual assertions in granting the government's motion to strike. To be sure, this Court's analysis focused primarily on Ms. Starling's late-filed claim, but that was because this Court found that issue dispositive. One can be sure that the government would have been equally content with a default judgment based on the lateness of Ms. Starling's answer, rather than a default judgment based on the lateness of her claim.

The weightiest concern, though, is the obvious prejudice Ms. Starling will suffer if this Court allows the government to reconstrue Ms. Starling's pro se answer as something else now. As this Circuit has recognized for decades, "[t]he purpose of [Rule 41(a)(1)] is to facilitate voluntary dismissals, but to limit them to an early stage of the proceedings before issue is joined." *Harvey Aluminum, Inc. v. Am. Cyanamid Co.*, 203 F.2d 105, 107 (2d Cir. 1953).

Here, Ms. Starling has already spent two years litigating this case and won an important precedential victory in the Second Circuit. Following that victory, Ms. Starling relied on the government's characterization of her December 3, 2021 filing as an answer in determining how to proceed on remand. Had the government not conceded that the filing was an answer, Ms. Starling could have filed an amended answer to remove any doubt and could have done so before the government filed its notice of voluntary dismissal.

Allowing the government to unilaterally dismiss this case without prejudice would thus punish Ms. Starling's reasonable reliance on the government's sworn representations. That would leave Ms. Starling with ongoing uncertainty over whether the government will seek to forfeit her money again. On top of that, dismissal without prejudice would frustrate Ms. Starling's ability to pursue attorneys' fees, costs, and interest to which she is entitled. Under CAFRA, a claimant who substantially prevails in a forfeiture action is entitled to recover "reasonable attorney fees and other litigation costs reasonably incurred," 28 U.S.C. § 2465(b)(1)(A), as well as "post-judgment interest," *id.* § 2465(b)(1)(B). But the majority rule among federal courts is that a claimant does not "substantially prevail" when a forfeiture case is dismissed without prejudice. *See, e.g.*, *United States v. $32,820.56*, 838 F.3d 930 (8th Cir. 2016). And although Ms. Starling disputes this interpretation of CAFRA—as explained in detail in Section IV, below— dismissal without prejudice would, at a minimum, make it more burdensome for Ms. Starling to pursue those remedies, a burden that other courts have found constitutes "a substantial legal prejudice." *See United States v. $107,702.66*, No. 7:14-cv-00295, 2016 WL 413093, at *3–4 (E.D.N.C. Feb. 2, 2016) (denying government motion to dismiss without prejudice and dismissing case with prejudice where "dismissal without prejudice would likely deprive Claimants of their right to seek recovery under CAFRA").

For these reasons, this Court should continue to characterize Ms. Starling's December 3, 2021 filing as the government itself always has: as an answer. Under

Federal Rule of Civil Procedure 41(a)(1)(A)(i), that answer precludes the government from dismissing this case without first seeking leave.

## II.    The Government Is Not Entitled to Dismissal Without Prejudice by Motion Because of the Severe Prejudice Claimant Starling Would Suffer.

As an alternative to dismissal by notice, the government has also moved to dismiss this case under Federal Rule of Civil Procedure 41(a)(2), also seeking dismissal without prejudice. As explained below, that motion should be denied. Alternatively, because Rule 41(a)(2) allows dismissal "only by court order, on terms that the court considers proper," this Court should grant dismissal on the condition that the dismissal be *with* prejudice.

"Voluntary dismissal without prejudice is not a matter of right." *Paulino v. Taylor*, 320 F.R.D. 107, 109–10 (S.D.N.Y. 2017). "In evaluating whether to dismiss a claim under Rule 41(a)(2), the relevant concern is whether the dismissal of the action will be unduly prejudicial" to the opposing party. *United States v. $7,877.61 United States Currency*, No. 09-CV-6306P, 2016 WL 5078380, at *2–3 (W.D.N.Y. Sept. 20, 2016) (cleaned up).

The Second Circuit has developed two approaches for determining when dismissal without prejudice under Rule 41(a)(2) is improper. *Camilli v. Grimes*, 436 F.3d 120, 123 (2d Cir. 2006). One line of authority "indicates that such a dismissal would be improper if the defendant would suffer some plain legal prejudice other than the mere prospect of a second lawsuit." *Id.* (internal quotation marks omitted). The other line of authority looks to five factors, known as the *Zagano* factors: (1) the plaintiff's diligence in bringing the motion, (2) any undue vexatiousness on the

plaintiff's part, (3) the extent to which the suit has progressed (4) the duplicative expense of relitigation, and (5) the adequacy of the plaintiff's explanation for the need to dismiss. *Id.* Applying either approach, dismissal without prejudice is improper.

First, dismissal without prejudice is improper because of the "plain legal prejudice" Ms. Starling would suffer. As discussed above (Section I.C.), under the majority rule, dismissal without prejudice would likely preclude Ms. Starling from recovering attorneys' fees and interest under CAFRA. The few federal courts that have considered the issue have concluded that this loss of the ability to recover attorneys' fees constitutes "plain legal prejudice." *United States v. Ito*, 472 F. App'x 841, 842 (9th Cir. 2012); *see also United States v. $107,702.66 in U.S. Currency*, No. 7:14-CV-00295-F, 2016 WL 413093, at *4 (E.D.N.C. Feb. 2, 2016) (dismissing a federal forfeiture case with prejudice in order not to deprive claimants of their right to seek fees CAFRA, which the court held would "constitute a substantial legal prejudice"); *United States v. Certain Real Prop.*, 543 F. Supp. 2d 1291, 1292 (N.D. Ala. 2008) (dismissing with prejudice for the same reason).

The alternative approach taken by courts in the Second Circuit—the five-factor *Zagano* test—counsels the same result.

On factor one, plaintiff's diligence, this motion was filed more than two years after this case commenced. The reason the government's motion comes so late bleeds into factor two, vexatiousness, because it seems that the reason for this motion is that the government can no longer win by default. In short, the

government thought it was worth forfeiting Ms. Starling's $8,040 when, as a *pro se* litigant, she became entangled in unfamiliar legal procedures, but then lost all interest the moment it had to defend that forfeiture on the merits against experienced pro bono counsel. *Cf. Starling*, 76 F.4th at 101 ("And because the typical forfeiture case concerns cash and goods with consequence to the deprived party but which rarely justify hiring a lawyer, a huge number of civil forfeiture cases are fought by claimants acting *pro se*."). This is part of a disturbing trend in the federal government's litigation conduct in forfeiture cases, in which it vigorously pursues forfeiture against unrepresented parties, only to abandon those forfeitures once pro bono counsel—specifically counsel from the Institute for Justice—enters the case.[5]

---

[5] *See Martin v. FBI et al.,* No. 1:23-cv-00618 (D.D.C. filed Mar. 7, 2023) (motion to dismiss filed June 8, 2023 (Doc. 15)); *Kazazi v. US Customs and Border Protection*, No. 1:18-mc-00051 (N.D. Ohio filed May 31, 2018) (government began process of returning money within one week, see Minutes of Proceedings of June 7, 2018); *Serrano v. U.S. Customs & Border Protection*, No. 2:17-cv-00048 (W.D. Tex. filed Sept. 6, 2017) (property returned Oct. 16, 2017; motion to dismiss filed Dec. 13, 2017); *Vocatura's Bakery, Inc. v. Internal Revenue Service*, No. 3:16-mc-00147 (D. Conn. Filed May 24, 2016) (dismissed June 17, 2016 following government's voluntary return of property); *United States of America v. $107,702.66 in U.S. Currency*, No. 7:14-cv-00295 (E.D.N.C. filed Dec. 23, 2014) (notice of appearance by IJ attorneys filed April 20, 2015; government's motion to dismiss filed May 13, 2015); *In the Matter of the Seizure of $446,651.11*, No. 2:14-mc-01288 (E.D.N.Y. filed Oct. 16, 2014) (case dismissed Jan. 21, 2015); *United States vs. $32,820.56 in U.S. Currency*, No. 5:13-cv-04102 (N.D. Iowa filed Oct. 24, 2013) (notice of appearance by IJ attorneys filed Oct. 13, 2014; government's motion to dismiss filed Dec. 13, 2014); *United States v. Thirty-Three Thousand Two Hundred Forty-Four Dollars and Eighty-Six Cents ($33,244.86) In U.S. Currency From TCF National Bank Account #6883796598*, No. 2:13-cv-13990 (E.D. Mich. filed Sept. 18, 2013) (notice of appearance by IJ attorneys filed Nov. 4, 2013; government motion to dismiss filed Nov. 15, 2013); *United States v. Thirty Five Thousand Six Hundred And Fifty-One Dollars And Eleven Cents ($35,651.11) in U.S. Currency from PNC Bank Account*

On factor three, the extent to which the case has progressed, Claimant had to litigate this case for two years. Although the case has not proceeded through discovery, that is only because Ms. Starling had to first appeal to the Second Circuit and prevail there to establish her right to even contest the forfeiture.

Factor four, the duplicative cost of re-litigation, also counsels against the government's motion or, at a minimum, does not counsel in favor of it. Claimant's counsel spent much time investigating the facts, speaking with witnesses, and preparing to litigate this case. If the government were to refile, much of that would have to be redone, even if Ms. Starling once again found pro bono counsel. Worse, if she could not, she would have to start over, and likely pay fees easily in excess of the $8,040 she stood to recover.

Finally, factor five, the adequacy of plaintiff's explanation for the need to dismiss, also counts strongly against the government for the simple reason that it has not explained its need to dismiss. Its motion to dismiss and affidavit in support give no reason at all. And the apparent explanation is damning: Seizing Ms. Starling's money was worth it to the government when it seemed she could be strongarmed into settlement because of her *pro se* status and unfamiliarity with complex forfeiture procedures, a possibility that vanished once she got pro bono

---

*Number XXXXXX6937*, No. 4:13-cv-13118 (E.D. Mich. filed July 19, 2013) (notice of appearance by IJ attorneys filed Sept. 20, 2013; government motion to dismiss filed Nov. 15, 2013); *United States v. Real Property Located at 2601 W. Ball Road*, No. 8:12-cv-01345 (C.D. Cal. filed Aug. 21, 2012) (stipulation of dismissal entered Oct. 10, 2013).

representation from a firm nationally recognized for its expertise fighting civil forfeiture.

This Court should not reward that conduct. "The court has sound discretion . . . to determine whether to grant or deny a Rule 41(a)(2) motion to dismiss," or to grant the motion "on terms that the court considers proper." *$7,877.61 United States Currency*, 2016 WL 5078380, at *2–3. This Court should dismiss this case *with* prejudice.

### III. Because Claimant Starling Is Entitled to Dismissal with Prejudice, She Is a Substantially Prevailing Party Under CAFRA.

As shown above, dismissal without prejudice would be improper under either Rule 41(a)(1) or Rule 41(a)(2). This Court should instead enter an order dismissing this case *with* prejudice. That order should also make clear that because Ms. Starling has recovered her money and because dismissal with prejudice precludes the government from ever again attempting to forfeit that money, she is a "substantially prevail[ing]" party under CAFRA and thus entitled to recover costs, fees, and interest. 28 U.S.C. § 2465(b)(1).

"In passing CAFRA, Congress was reacting to public outcry over the government's too-zealous pursuit of civil and criminal forfeiture." *United States v. Khan*, 497 F.3d 204, 208 (2d Cir. 2007). "As part and parcel of this effort to deter government overreaching, Congress provided for the payment of 'reasonable attorney fees and other litigation costs' to claimants who 'substantially prevail[ ]' in a 'civil proceeding to forfeit property.'" *Id.*

Claimant expects that the government will argue that Ms. Starling cannot "substantially prevail" without having won a merits ruling. But, as with other federal fee-shifting statutes, nothing in the text of CAFRA mentions any requirement that a court address the merits of the case or issue a judgment on the merits. Instead, CAFRA's fee-shifting provision simply states: ". . . in any civil proceeding to forfeit property under any provision of Federal law in which the claimant substantially prevails, the United States shall be liable for reasonable attorney fees and other litigation costs reasonably incurred by the claimant." 28 U.S.C. § 2465(b)(1).

As the Supreme Court has held when interpreting the distinct but similar statutory term "prevailing party,"[6] "[t]he touchstone of the prevailing party inquiry must be the material alteration of the legal relationship of the parties in a manner which Congress sought to promote in the fee statute." *Tex. State Teachers Ass'n v. Garland Indep. Sch. Dist.,* 489 U.S. 782, 792–93 (1989). "The CAFRA fee-shifting provision was designed to make claimants whole for their efforts to recover their property in a civil forfeiture action." *Certain Real Prop.,* 579 F.3d at 1323 (emphasis added) (citing H.R. Rep. No. 106-192 (1999)). The Court need not trace the outer limits of these concepts to recognize that, at a minimum, a claimant who manages

---

[6] As explained in Section IV, below, Congress intentionally used the phrase "substantially prevails" to create a broader right to relief than under the narrower term "prevailing party." As explained in this section, however, if this Court dismisses this case *with* prejudice, Ms. Starling will also satisfy the more demanding standards required to be a "prevailing party," and this Court will not need to determine whether she would also be entitled to fees if this case were dismissed *without* prejudice.

to recover her property, and who has obtained a court order that precludes the government from seeking to forfeit that property again, has achieved a material alteration of the legal relationship of the parties sufficient to justify an award of fees.

Here, Ms. Starling has recovered her property. Thus, the only remaining question is whether a dismissal with prejudice, precluding the government from ever again seeking forfeiture of that money, qualifies as a material alteration of the legal relationship of the parties. As shown below—under both the Supreme Court's leading decision on prevailing-party status and the limited existing precedent on the availability of CAFRA fees in cases of dismissal with prejudice—it does qualify. Thus, Ms. Starling is a substantially prevailing party under CAFRA.

## A. Voluntary dismissal with prejudice under Rule 41(a)(2) is a court-ordered change in the parties' legal relationship under the Supreme Court's ruling in *Buckhannon.*

The U.S. Supreme Court's most authoritative discussion of what it means to be a "prevailing party" for purposes of federal fee-shifting statutes appears in *Buckhannon Board & Care Home, Inc. v. West Virginia Department of Health & Human Resources*, 532 U.S. 598 (2001). Under *Buckhannon*, this Court asks whether a case resulted in "a court-ordered material alteration of the legal relationship of the parties." *Smalbein ex rel. Est. of Smalbein v. City of Daytona Beach*, 353 F.3d 901, 904 (11th Cir. 2003) (internal quotation marks and alteration omitted). That happens, of course, when a party is awarded relief on the merits of its claims. *Id*. at 905. But it also happens when there is "sufficient judicial imprimatur" on a change in the parties' legal relationship. *Id.*

Courts have thus expressed the *Buckhannon* rule as a two-part test, asking "(1) whether there is a material alteration of the legal relationship of the parties, and (2) whether that material alteration is judicially sanctioned" or has "judicial imprimatur." *Raab v. City of Ocean City*, 833 F.3d 286, 292–93 (3d Cir. 2016) (internal quotation marks and alteration omitted); *Abdelgalel v. Holder*, 398 F. App'x 472, 476 (11th Cir. 2010) ("[U]nder *Buckhannon* . . . the plaintiff must show both a 'material alteration of the legal relationship' of the parties and that the change is 'judicially sanctioned.'").

A Rule 41(a)(2) dismissal with prejudice satisfies both prongs of the *Buckhannon* test. First, it changes the relationship, preventing the government from refiling its forfeiture petition. Other federal courts have recognized as much. In *Green Aviation Management Co. v. FAA*, for example, the D.C. Circuit held that a defending party prevailed under *Buckhannon* where the "dismissal order has *res judicata* effect and brought . . . proceedings against [it] to an end." 676 F.3d 200, 205 (D.C. Cir. 2012). Likewise, at least one district court has held that forfeiture claimants substantially prevail under CAFRA when they obtain dismissals with preclusive effect: "[C]laimants will be able to rely on a *res judicata* defense if the government, no matter how unlikely, files another civil forfeiture action." *United States v. Certain Real Prop.*, 543 F. Supp. 2d 1291, 1294 (N.D. Ala. 2008).

A dismissal with prejudice also satisfies the second prong of *Buckhannon*, which asks whether the parties' change in legal relationship was "judicially sanctioned." Rule 41(a)(2) dismissals are court judgments, entered by the court:

"[A]n action may be dismissed at the plaintiff's request only by court order, on terms that the court considers proper." They are therefore not mere agreements between the parties. And because Rule 41(a)(2) dismissals are court-entered judgments, they have "the necessary judicial imprimatur to constitute a judicially sanctioned change in the legal relationship of the parties" under *Buckhannon*. *Highway Equip. Co. v. FECO, Ltd.*, 469 F.3d 1027, 1035 (Fed. Cir. 2006); *see also Claiborne v. Wisdom*, 414 F.3d 715, 719 (7th Cir. 2005) (a voluntary dismissal with prejudice "effects a material alteration of her legal relationship with the other parties, because it terminates any claims she may have had against them arising out of this set of operative facts. If she were to try to bring the same claim in the future, the defendants would be entitled to rely on a claim preclusion or *res judicata* defense."); *Berishev v. Chertoff*, 486 F. Supp. 2d 202, 205 (D. Mass. 2007) ("[D]ismissal under Rule 41(a)(2) requires substantial judicial action . . . deemed enough to meet the definition of judicial imprimatur."); *Bryant v. MV Transp., Inc.*, 231 F.R.D. 480, 482 (E.D. Va. 2005) (same).

## B. Existing forfeiture precedent supports the conclusion that a claimant substantially prevails when a forfeiture case is voluntarily dismissed with prejudice.

Although no appellate cases directly resolve whether a claimant who obtains a dismissal of their case with prejudice substantially prevails under § 2465(b), the limited precedent that exists strongly supports that conclusion.

The closest a federal appellate court has come to resolving this issue is the Ninth Circuit's unpublished opinion in *United States v. Ito*, 472 F. App'x 841 (9th Cir. 2012). There, the Ninth Circuit found that a district court abused its discretion

by overlooking whether a claimant would suffer legal prejudice—the inability to seek attorneys' fees—because of a dismissal without prejudice. 472 F. App'x at 841–42.[7] In so holding, the court found that "[t]he district court did not recognize that dismissal without prejudice precludes prevailing party status. Without prevailing party status, the Itos were unable to bring their attorney's fees motion under the Civil Asset Forfeiture Reform Act." *Id.* at 842 (citations omitted). While the Ninth Circuit did not explicitly say in *Ito* that a dismissal with prejudice would satisfy prevailing party status, that is the strong implication of its opinion.[8]

At least one district court opinion has directly addressed this issue when deciding whether to dismiss a forfeiture case with or without prejudice under Rule 41(a)(2). In *United States v. Certain Real Property*, "the government initially filed a motion to dismiss [the] case with prejudice" and "only withdrew its motion to dismiss with prejudice after it realized that a dismissal with prejudice might entitle the claimants to recover their attorneys' fees and costs." 543 F. Supp. 2d 1291, 1292 (N.D. Ala. 2008). The court correctly found that because of the dismissal with prejudice, "the claimants are entitled to recover attorneys' fees as the 'substantially

---

[7] As Claimant observed in note 1, above, and explains in detail in Section IV, below, Claimant disputes the view that dismissal without prejudice precludes prevailing party status in all circumstances, but the *Ito* court was correct to suggest that a dismissal with prejudice does satisfy CAFRA's "substantially prevails" requirement.

[8] Relatedly, without explicitly stating that a dismissal with prejudice would satisfy CAFRA's "substantially prevails" requirement, the Eighth Circuit has held that, "[i]f a court is convinced that dismissal *without* prejudice at the government's request would cause legal prejudice to a claimant by unfairly depriving her of the ability to seek attorney fees under CAFRA, then the court may deny the government's motion." *United States v. $32,820.56*, 838 F.3d 930, 936 (8th Cir. 2016).

prevailing' party." *Id.* at 1294. Reaching this conclusion, the court found that its ruling dismissing the government forfeiture case with prejudice "clearly 'qualifies as a judicially qualified change in the legal relationship of the parties' and thus satisfies the standard announced in *Buckhannon*." *Id.*

Also reaching the same conclusion with similar reasoning, the U.S. District Court for the Eastern District of North Carolina rejected the government's attempt to voluntarily dismiss a civil forfeiture case without prejudice because "a voluntary dismissal without prejudice would likely preclude prevailing party status under CAFRA, depriving Claimants of their right to bring a claim under that statute." *United States v. $107,702.66*, No. 7:14-CV-00295-F, 2016 WL 413093, at *4 (E.D.N.C. Feb. 2, 2016). That court, citing *Buckhannon* and various federal appellate decisions applying *Buckhannon* in the context of CAFRA fee-shifting, dismissed the case *with prejudice* because it was concerned that to do otherwise would "work a substantial legal prejudice" on the claimants. *Id.* at *3.

Thus, existing CAFRA fee-shifting precedent strongly suggests that a claimant substantially prevails under § 2465(b) when the forfeiture case against their property is dismissed with prejudice. This court should hold the same.

### IV. Even if This Court Dismisses This Case Without Prejudice, It Should Still Hold That Claimant Starling Has Substantially Prevailed under CAFRA.

Claimant's discussion of CAFRA to this point has reflected the majority view of federal courts that a claimant who recovers her property and whose case is dismissed without prejudice is not a substantially prevailing party under CAFRA. If this Court agrees with that view, then, as discussed above, this Court should grant

dismissal *with* prejudice, because denying Ms. Starling the opportunity to recover costs, fees, and interest under CAFRA would be plain legal prejudice to her.

But this Court also has an alternative: It can reject the view of these other courts and hold that a Claimant substantially prevails when she recovers her money and the case against her is dismissed, whether or not that dismissal is with prejudice. That view is both the better reading of CAFRA's text and the view best supported by that law's legislative history. It also avoids the absurd results and perverse incentives that follow from the majority approach.

### A. CAFRA's plain text supports an award of fees, costs, and interest, even if this case is dismissed without prejudice.

In CAFRA, Congress did not suggest that an award of fees, costs, and interest should turn on fine procedural distinctions. Instead, Congress provided that an award of fees, costs, and interest should be available wherever a civil forfeiture claimant has "substantially prevailed" in the litigation. Ms. Starling easily falls within that capacious statutory language.

First, although most courts to address this issue have treated CAFRA as identical to other fee-shifting provisions regarding "prevailing parties," that is not the language that Congress used in CAFRA. Congress instead selected broader language, determining that fees should be awarded to any party that has "*substantially* prevail[ed]." 28 U.S.C. § 2465(b)(1).

Congress's use of "substantially" indicates that it intended for courts to look to the substance of the result achieved by the claimant in the litigation. The word "substantially" is defined to mean "consisting of or relating to substance." *Merriam-*

*Webster Collegiate Dictionary* 1174 (10th ed. 1993). And Congress's use of this word also indicates that something short of a final judgment on the merits can support an award of fees, as the word "substantially" is further defined to mean "largely *but not wholly* that which is specified." *Id.* (emphasis added). In other words, the word "substantially" directs courts to look to the substance of the result achieved to see if the claimant has "largely" prevailed in the litigation—even if that is not "wholly" true as a formal procedural matter.

Statutory context confirms this interpretation. While CAFRA's provision for fees, costs, and interest appears in section 2465(b)(1), the preceding section directs the court to issue a certificate that "there was reasonable cause for the seizure or arrest" of the property "[u]pon the entry of judgment for the claimant." 28 U.S.C. § 2465(a). The contrast between these two phrases used in such close proximity— one referring to "entry of judgment" and the other referring to a claimant who has "substantially prevail[ed]"—is significant. It reaffirms that Congress did not intend for the availability of fees, costs, and interest to turn on the formal niceties of the "judgment" entered in a forfeiture action. Rather, while the provisions of subsection (a) are triggered by the formal entry of a "judgment," the provisions of subsection (b) turn on the substance of the result achieved in the litigation.

Looking to the substance of the result achieved here, there can be no serious question that Ms. Starling has prevailed. She has obtained the return of her money; the $8,040 that the government seized more than two years ago was returned to her. Although dismissal without prejudice would allow the government to refile this

case—and consequently subject Ms. Starling to ongoing stress and uncertainty—they have not suggested that they intend to do so, and it would be unusual in the extreme for them to do so. In short, following dismissal, this litigation will have come to a close, and Ms. Starling will have prevailed.

Indeed, even if *Buckhannon*'s more restrictive legal standard did apply to the civil forfeiture context, Ms. Starling still would have a right to fees in light of the result achieved. Unlike voluntary cessation in a private-plaintiff lawsuit, the government's decision to voluntarily return property in a civil forfeiture action *does* give rise to a "material alteration of the legal relationship of the parties." *Buckhannon*, 532 U.S. at 604. At the start of the litigation, the government had lawful possession of Ms. Starling's property, but, when the government terminated its complaint, it lost any legal basis to retain possession and, accordingly, the court ordered the government to return the money to Ms. Starling. *See* Doc. 35. Ms. Starling here sought to recover her $8,040, and, under any standard, she has achieved that result and thus should be viewed as a prevailing party.

**B. Legislative history also supports an award of fees, costs, and interest in this case.**

Like the statute's text, all of the available legislative history suggests that Congress meant for someone in Ms. Starling's position to receive an award. Congress's whole purpose when it enacted CAFRA in 2000 was to curb forfeiture abuses and help make property owners whole after wrongful seizures. *United States v. One Lincoln Navigator 1998*, 328 F.3d 1011, 1012 n.1 (8th Cir. 2003) (stating that CAFRA was enacted "to make federal civil forfeiture procedures fair to property

owners and to give owners innocent of any wrongdoing the means to recover their property and make themselves whole after wrongful government seizures") (quoting H.R. Rep. No. 106-192 at 11 (1999) and citing Pub. L. No. 106-185, § 2, 114 Stat. 202)); *cf. United States v. Khan*, 497 F.3d 204, 208 (2d Cir. 2007) ("In passing CAFRA, Congress was reacting to public outcry over the government's too-zealous pursuit of civil and criminal forfeiture.").

CAFRA made "eight 'core reforms.'" *One Lincoln Navigator*, 328 F.3d at 1012 n.1. According to Representative Henry Hyde of Illinois (CAFRA's principal sponsor), among these "core reforms" was the provision of attorneys' fees to any "claimant [who] substantially prevails." 146 Cong. Rec. 5228 (discussing the bill's "eight fundamental reforms").[9]

The characteristics of the "claimant [who] substantially prevails" are shown by testimony in the House Judiciary Committee, which Representative Hyde then chaired. *See id.* at 5230 (stating that "the House Judiciary Committee Report remains the best legislative history" because no report was prepared in the Senate); 5233 (noting Hyde chaired the Judiciary Committee). Among other, the Committee heard the case of Billy Munnerlyn, in which "there was no happy ending." H.R. Rep. 106-192 at 9. Munnerlyn told the committee how his airplane-charter business was ruined after he unwittingly flew a drug dealer from Arkansas to California and, when they landed, his airplane was seized. *Id.* at 8–9. Like Ms. Starling, Munnerlyn

---

[9] The relevant excerpts from the *Congressional Record* may be found at https://www.govinfo.gov/content/pkg/CRECB-2000-pt4/pdf/CRECB-2000-pt4-issue-2000-04-11.pdf (last visited Jan. 14, 2024).

was not charged with a crime, but he spent a lot of money trying to get his property back—over $85,000. *Id.* Committee members heard how Munnerlyn's air-charter business went bankrupt because of his legal expenses and heard how he was working as a truck driver to make ends meet. *Id.*

When CAFRA later came to the House floor for final passage, Representative Hyde described the purpose of the new fee-shifting provision as follows:

> The bill provides that property owners who substantially prevail in court proceedings challenging the seizure of their property will receive reasonable attorney's fees. . . . Currently, property owners who successfully challenge the seizure of their property almost never are awarded attorney's fees.

146 Cong. Rec. 5228.

Representative Sheila Jackson-Lee of Texas—also a member of the Judiciary Committee—echoed the experience of Billy Munnerlyn when she encouraged members to vote for CAFRA. *See* 146 Cong. Rec. 5233 (noting that, under then-current law, a "property owner may exhaust his or her financial assets in attorney's fees to fight for the return of property"). She stressed the government's disproportionate power in forfeiture proceedings and called on members to restore basic fairness. *Id.* ("These reforms simply balance the scales so that innocent people have a level playing field on which to challenge improper seizures."). All of this shows how CAFRA was meant to correct what Congress viewed as a fundamental inequity in the nation's forfeiture laws: the high price that innocent people must pay to reclaim their property.

27

Nothing in CAFRA's text or legislative history suggests that a claimant who obtains a dismissal without prejudice is categorically barred from recovering attorneys' fees, costs, and interest. In fact, the opposite is true: Congress wanted people to be compensated for their attorneys' fees and expenses when they succeed "substantially" in getting their property back. And Congress was particularly concerned about cases, like this case, in which innocent people run up huge legal bills in the process.

### C. The contrary interpretation of CAFRA leads to absurd results.

A ruling that Ms. Starling did not "substantially prevail" on the facts here—whether or not dismissal is entered with prejudice—would lead to absurd results in future CAFRA cases. Claimants against whom the government had *better* claims and *better* evidence would have access to fee-shifting because their cases would progress further into litigation. At the same time, claimants like Ms. Starling would be barred from receiving fees precisely because they could show relatively early on that there was *no* evidence of a federal offense. Thus, awards would be available when the government's case was strong and unavailable when the government's case was meritless or not worth pursuing.[10] This result is manifestly counter to

---

[10] In fact, courts sometimes allow CAFRA awards in situations where the government achieved more than a measure of success and the claimant arguably lost. *See, e.g.*, *United States v. $1,379,879.09*, 374 F. App'x 709, 710–11 (9th Cir. 2010) (finding claimant "substantially prevailed" by obtaining an order of dismissal with prejudice in a civil action, even though the government forfeited the same property in a parallel criminal case); *United States v. Approximately 250 Documents Containing the Forged Handwriting of President John F. Kennedy*, No. 03 Civ. 8004, 2011 WL 6224525, at *4–5 (S.D.N.Y. Dec. 14, 2011) (finding claimants

CAFRA's purpose of "giv[ing] owners innocent of any wrongdoing the means to recover their property and make themselves whole after wrongful government seizures." *See One Lincoln Navigator*, 328 F.3d at 1012 n.1 (citations omitted).

Denying fees to claimants like Ms. Starling also ignores the staggering toll that litigating against the federal government can take on an innocent person, a concern that Congress specifically tried to resolve by enacting CAFRA's fee-shifting provision. Even based on the weak allegations here, the government held Ms. Starling's money for more than two years. The *only* reason Ms. Starling managed to secure the return of her $8,040 was that she secured the services of pro bono lawyers. If Ms. Starling has not "substantially prevailed," then CAFRA does not provide innocent people with the "the means to recover their property and make themselves whole," as Congress intended. *See One Lincoln Navigator*, 328 F.3d at 1012 n.1.

Indeed, if Ms. Starling cannot receive an award of fees and expenses, then the government could do the same thing to anyone. Based on virtually no investigation,[11] the government could seize a person's life savings and keep it, for years, before exiting the case based on a voluntary dismissal without prejudice, without any interest or compensation of any kind. That result would be directly counter to making "federal civil forfeiture procedures fair to property owners"—*i.e.*,

---

"substantially prevailed" at summary judgment because they obtained the return of their documents, even though the Court ruled that the documents were forgeries and ordered them permanently stamped as such).

[11] *See, e.g.*, Complaint (Doc. 1), ¶ 16 (alleging that "Starling's employment is unknown").

the main purpose for which Congress enacted CAFRA. *See id.* In keeping with Congress's intent, the Court should hold that Ms. Starling is entitled to attorneys' fees, costs, and interest. There may be circumstances in which a dismissal without prejudice does not allow for an award under CAFRA, but this is not one of them.

## Conclusion

This Court should strike the government's Notice of Voluntary Dismissal and deny the government's motion to dismiss. This Court should enter an order dismissing this case with prejudice and holding that Claimant Cristal Starling is a prevailing party under CAFRA. Alternatively, if this Court believes that dismissal without prejudice is appropriate, this Court should—in keeping with the text and legislative history of CAFRA—hold that Ms. Starling has substantially prevailed and is entitled to costs, fees, and interest.

Dated: January 15, 2024

PHILLIPS LYTLE LLP

By: /s/ Nicholas R. Fedorka
Nicholas R. Fedorka
28 East Main Street, Suite 1400
Rochester, NY 14614
Tel: 585-238-2046
NFedorka@phillipslytle.com

Respectfully submitted,

INSTITUTE FOR JUSTICE

By: /s/ Paul Sherman
Paul Sherman*
William Aronin*
901 N. Glebe Rd, Ste 900
Arlington, VA 22203
Tel: 703-682-9320
PSherman@ij.org, WAronin@ij.org
*admitted pro hac vice*

Attorneys for Claimant *Cristal Starling*