UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF NEW YORK

---

UNITED STATES OF AMERICA,

                       Plaintiff,

-v-

$8,040 UNITED STATES CURRENCY,

                       Defendant.

6:21-CV-6323-CJS

**DECISION AND ORDER**

---

## INTRODUCTION

This is an *in rem* action pursuant to 21 U.S.C. § 881(a)(6) for civil forfeiture of money seized during a drug trafficking investigation in Rochester, New York. Plaintiff United States Attorney's Office ("Government") initiated the proceeding against $8,040 in United States currency seized from the home of Claimant Cristal Starling.

Before the Court is the Government's notice of voluntary dismissal without prejudice under Rule 41(a)(1) of the Federal Rules of Civil Procedure (ECF No. 27), and the Government's motion for voluntary dismissal without prejudice pursuant to Rule 41(a)(2) should dismissal by notice be unavailable. (ECF No. 36). Claimant Starling opposes the Government's attempt to dismiss by notice and its motion for dismissal without prejudice. (ECF Nos. 38, 42). Also before the Court is Starling's application for attorney fees, costs, and interest under the Civil Asset Forfeiture Reform Act ("CAFRA") (28 U.S.C. § 2465). *Id.*

For the reasons that follow, the Government is not entitled to voluntary dismissal by notice, the Government's motion to dismiss without prejudice is granted, and Starling's request for CAFRA fees is denied.

1

## BACKGROUND

This action arises from the seizure of $8,040 in United States currency from the home of Claimant Cristal Starling by the Rochester Police Department ("RPD") on October 29, 2020. (ECF No. 1). The money was seized during the execution of a search warrant related to a drug trafficking investigation into Starling's then-boyfriend K.B. *Id.*

After RPD turned the money over to the Drug Enforcement Administration ("DEA"), the DEA initiated an administrative forfeiture procedure to claim the funds as drug proceeds. (ECF Nos. 1, 28). Starling filed a claim to the currency with the DEA in January 2021, which terminated the administrative proceeding and prompted the United States Attorney's Office to initiate the subject judicial forfeiture proceeding by filing a complaint against the currency in April 2021. *Id.*

On June 14, 2021 the Government served Starling with a copy of the complaint and notice of the forfeiture action. (ECF No. 4). It also posted an official notice on the Government's civil forfeiture website. (ECF No. 5). The notice stated that to contest the forfeiture, Starling needed to file a verified claim to the currency by July 16, 2021. (ECF No. 6 ¶ 4).

Starling did not file a claim by that deadline, and the Government moved for an entry of default on August 20, 2021. (ECF. No. 6 ¶ 7). This Court entered default on August 24, 2021. (ECF No. 7). The Government then moved for default judgment on September 3, 2021. (ECF No. 8).

Roughly three months later, before the motion for default judgment was decided, Starling, acting *pro se,* wrote a letter to the U.S. Attorney's office and this Court, seeking return of the currency. (ECF No. 9). Following a settlement offer from the Government, Starling wrote another letter, filed December 3, 2021. (ECF No. 10).

2

In the December 3, 2021 letter, Starling rejected the Government's settlement offer. *Id.* She also stated that "nothing illegal" was found in her home. *Id.* She said that she wanted "to move forward with court proceedings to have all of the funds returned to [her] promptly," and that she was entitled to the return of the defendant currency because the criminal charges in the case against her then-boyfriend were "dismissed based on [a]cquittal of all matters in the City [C]ourt of Rochester NY." *Id.*

On December 15, 2021 the Government moved to strike what it called Starling's "late claim and answer," since they were filed after the deadline given in the Government's forfeiture notice. (ECF No. 11).

On February 3, 2022 this Court granted the Government's motion to strike and entered default judgment in favor of the Government. (ECF No. 18).

Starling appealed to the Second Circuit Court of Appeals. The Second Circuit found that Starling's December 3, 2021 filing should have been interpreted as both a motion to file a late claim and a motion to lift entry of default. *See United States v. Starling*, 76 F.4th 92 (2023). It said that this Court interpreted Starling's *pro se* filings too narrowly, and used the wrong standard to assess her motions for lifting entry of default and to file a late claim. *Id.*

On September 27, 2023 the Second Circuit issued a mandate vacating this Court's entry of default and its denial of Starling's late claim. (ECF No. 28).

Considering the Second Circuit's mandate, which allowed Starling to continue her judicial pursuit of the currency, the Government decided it no longer wished to proceed. As the Government later explained, the amount of currency at issue no longer met the "current thresholds of the USAO-WDNY." (ECF No. 41 at 13).

3

On the day the Second Circuit issued its mandate, the Government filed notice of voluntary dismissal without prejudice, pursuant to Federal Rule of Civil Procedure 41(a)(1)(A)(i). The Government claimed that it was entitled to voluntarily dismiss its action, without court order, because Starling had not filed an answer to the Government's complaint against the currency. (ECF No. 27).

Starling, now represented by counsel, indicated that she opposed the Government's attempt to voluntarily discontinue the action. The Court then ordered the parties to brief the following issues: 1) whether the Government was able to voluntarily discontinue the action without prejudice as a matter of right; 2) if not, whether the Court should dismiss the action with prejudice or without prejudice; and 3) whether Starling was entitled to CAFRA fees.

In the meantime, on December 14, 2023, the Government informed the Court that it intended to release the defendant currency to Starling, and the Court ordered its release. (ECF No. 34-35).

On December 22, 2023 the Government submitted a motion to voluntarily dismiss without prejudice by court order, pursuant to Rule 41(a)(2), should dismissal by notice be unavailable under Rule 41(a)(1). (ECF No. 36).

Starling opposes the Government's attempts to dismiss without prejudice. Starling contends that the Government is not entitled to dismissal by notice because her December 3, 2021 *pro se* filing constitutes an answer and precludes dismissal under Rule 41(a)(1)(A)(i). She also argues that the court should order Rule 41(a)(2) dismissal with prejudice, based on relevant Second Circuit authority. Finally, she argues that she is entitled to attorney fees, litigation costs, and interest under the Civil Asset Forfeiture Reform Act ("CAFRA") (28 U.S.C. § 2465) because she "substantially prevailed" in a civil forfeiture proceeding. (ECF Nos. 38, 42).

## DISCUSSION

The following issues are before the Court: 1) whether Starling filed an answer, and therefore whether the Government is entitled to voluntary dismissal by notice under Rule 41(a)(1)(A)(i); 2) whether, if Starling has filed an answer and dismissal by notice is not available, the Court should order dismissal with or without prejudice under Rule 41(a)(2); and 3) whether Starling has "substantially prevailed" under CAFRA, entitling her to attorney fees, litigation costs, and interest.

### I.   The Government cannot dismiss by notice because Starling's December 3, 2021 *pro se* filing qualifies as an answer.

On September 27, 2023 the Government filed notice of voluntary dismissal in this action pursuant to Rule 41(a)(1)(A)(i). (ECF No. 27). A plaintiff may voluntarily dismiss an action without a court order under Rule 41(a)(1)(A)(i) by filing notice of dismissal before an answer or motion for summary judgment by the opposing party. Such a dismissal is without prejudice unless the notice states otherwise. Rule 41(a)(1)(B).

The issue here is whether the claimant, Cristal Starling, filed an answer before the Government's notice of voluntary dismissal.

Starling argues that her December 3, 2021 *pro se* filing (ECF No. 10) qualifies as an answer and precludes dismissal by notice. (ECF No. 42). That filing reads, in part:

> To whom it may concern, I Cristal Starling am writing the courts of The Western District Of New York to file an answer to a settlement offer made by US district attorney Grace Carducci in regards to currency in the amount of $8040.
> Ms. Carducci's associate Kiana Ferrel contacted me on November 2, 2021 to offer me a settlement of half of the currency; of which was confiscated from me at my home at 466 1/2 W. Main St. Apt 401 Rochester, NY 14608 on October 29, 2020. The cause of this search warrant was for alleged drug activity made by an ex boyfriend by the name of [K.B.].

> There were two search warrants Executed simultaneously of which were for my address of 466 1/2 W. Main St. Rochester, NY and [K.B.'s] address of 21 Pardee St. Rochester, NY.
> There was nothing illegal found in my home at all, yet my money was confiscated. This money has been in the custody of the Western District of New York for some time now. I would like to move forward with court proceedings to have all of the funds returned to me promptly. This money being taken has caused a hardship for me, as I am a single woman raising a medically fragile child with no outside support.
> The charges that stemmed from the execution of the search warrant for [K.B.] has since been dismissed based on Acquittal of all matters in the City court of Rochester NY. I have been advised that due to all charges being thrown out and legal proceedings ceased, any property confiscated during the legal process should be returned to its rightful owner.

(ECF No. 10).

The Government, which, as noted above, previously referred to this filing as an "answer," now contends that Starling did not file a proper answer and that it is entitled to voluntary dismissal by notice. (ECF No. 41 at 5-8). It argues that the doctrine of judicial estoppel prevents Starling from positing that her filing was an answer. It also argues that the filing cannot be interpreted as an answer because it lacks the essential elements of an answer.

### A. Judicial Estoppel does not preclude either party from arguing for their respective interpretations of Starling's December 3, 2021 filing.

At various points in the litigation, both sides have argued that judicial estoppel precludes the opposing party from litigating the issue of whether Starling's December 3, 2021 filing was an answer. Starling contends that the Government's previous characterization of the filing as an answer precludes it from now asserting otherwise: "the doctrine of judicial estoppel precludes the Government from recharacterizing Claimant Starling's Answer as something else." (ECF No. 38 at 8). The Government counters that, "Starling is judicially estopped from now arguing, or recharacterizing, her December 3, 2021 filing as an answer," and adding that, "the [Second

6

Circuit] decision [in *United States v. Starling*] puts an end to the various ways that this Court, the Government, and Starling have all referred to the December 3, 2021 filing." (ECF No. 41 at 6-7).

The judicial estoppel doctrine prevents parties from assuming a position contrary to a position previously successfully maintained in a legal proceeding. *New Hampshire v. Maine*, 532 U.S. 742, 742 (2001). However, in the Second Circuit, "judicial estoppel applies only when a tribunal in a prior *separate* proceeding has relied on a party's inconsistent factual representations and rendered a favorable decision." *Adler v. Pataki*, 185 F.3d 35, 41 n.3 (2d Cir. 1999) (italics in original).

The Court finds that judicial estoppel does not apply here, since the doctrine pertains only to factual representations and not legal arguments. *See, e.g., In re Payment Card Interchange Fee & Merch. Disc. Antitrust Litig.*, No. 05-MD-1720 (MKB), 2024 WL 4224160, at *8 (E.D.N.Y. Sept. 18, 2024) ("Judicial estoppel typically only applies to inconsistent factual positions, not to issues of law."). Judicial estoppel is also inapplicable here because any inconsistent factual representations were made in this same proceeding. Therefore, both sides are free to argue for their respective interpretations of Starling's December 3, 2021 filing.

**B. Starling's December 3, 2021 filing should be interpreted as an answer under the Second Circuit's precedent for interpreting *pro se* filings.**

Courts should hold *pro se* filings to "less stringent standards than formal pleadings drafted by lawyers." *Erickson v. Pardus*, 551 U.S. 89, 94 (2007) (internal citations omitted). Courts have "an obligation" to "make reasonable allowances to protect *pro se* litigants from inadvertent forfeiture of important rights because of their lack of legal training." *Traguth v. Zuck*, 710 F.2d 90, 95 (2d Cir. 1983). Therefore, courts read *pro se* papers liberally and interpret them to raise the strongest arguments they suggest. *Burgos v. Hopkins*, 14 F.3d 787, 790 (2d Cir.

7

1994). Courts will interpret *pro se* filings based on the intent of the filing party and the relief they seek. *See Starling*, 76 F.4th at 99.

The Second Circuit has already applied these principles of interpretation to Starling's *pro se* filings. *See id.* On appeal, it said that this Court interpreted Starling's filings too narrowly:

> The district court deemed these letters to be an untimely motion to file "a claim on the defendant currency." This was true enough—the letters plainly communicate a claim to the seized funds. But they also communicate a desire to "move forward with court proceedings to have all of the funds returned." This is the plea of any tardy litigant trying to lift entry of default: She was ready to litigate and wanted to win. The district court was required to heed that message.

*Starling*, 76 F.4th at 99 (citations omitted).

The Government argues that Starling's December 3, 2021 filing is not an answer because it does not admit or deny any of the allegations in the complaint, as required by Fed. R. Civ. P. 8(b). (ECF No. 41 at 7). However, a liberal reading of Starling's filing reveals that it does comply with Rule 8.

The Government's complaint recounts the narcotics investigation that preceded the seizure of the currency. (ECF No. 1). It states that, "[b]ased on all the foregoing facts, and circumstances, and the experience and training of the law enforcement officers involved, the $8,040 United States Currency was furnished or intended to be furnished in exchange for controlled substances...." *Id.* at ¶ 18. Starling's December 3, 2021 letter disputes this assertion, stating that "nothing illegal [was] found in my home at all, yet my money was confiscated." (ECF No. 10 at 1). Starling also expresses a desire to move forward with the judicial forfeiture proceeding to fight for the return of her currency. *Id.*

While Starling's filing was not a one-to-one, paragraph-by-paragraph response to the Government's complaint, it still served the basic purpose of an answer. Starling recounts the factual circumstances surrounding the money she is attempting to reclaim and generally denies

the legal relevance of the Government's assertions underlying its seizure. (ECF No. 10). That is, she asserts that she is entitled to the return of the property simply by virtue of the acquittal of her boyfriend on his criminal charges. Although this assertion is an incorrect statement of law, her filing nevertheless suffices as an answer when liberally read to raise the strongest argument it suggests. Consequently, the Government is precluded from voluntary dismissal by notice under Rule 41(a)(1)(A)(i).

## II.     The Government's motion to dismiss by court order without prejudice is granted.

Where voluntary dismissal by notice is unavailable under Rule 41(a)(1), a plaintiff must request the court to order dismissal of its action. Rule 41(a)(2). "The grant or denial of a dismissal on motion under Rule 41(a)(2) is within the sound discretion of the trial court." *Bynum v. Maplebear Inc.*, 209 F. Supp. 3d 528, 535 (E.D.N.Y. 2016) (internal quotations omitted). Unless otherwise stated, such a court-ordered dismissal is without prejudice. Rule 41(a)(2). "Although voluntary dismissal without prejudice is not a matter of right, there is a presumption in this circuit that generally motions to dismiss claims without prejudice should be granted." *Ascentive, LLC v. Opinion Corp.*, No. 10 CIV. 4433 ILG SMG, 2012 WL 1569573, at *2 (E.D.N.Y. May 3, 2012); *see also McCombs v. M&T Bank Corp.*, 335 F.R.D. 41, 43-44 (W.D.N.Y. 2020).

"Two lines of authority" have developed regarding when dismissal without prejudice may be improper in the Second Circuit. *Camilli v. Grimes*, 436 F.3d 120, 123 (2d Cir. 2006). One line posits that dismissal without prejudice is improper if the defendant would suffer some "plain legal prejudice," beyond the possibility of a second lawsuit. *Id.* The other line directs Courts to weigh a set of factors, called *Zagano* factors, to determine whether dismissal without

prejudice is proper. *Zagano v. Fordham Univ.*, 900 F.2d 12, 14 (2d Cir. 1990). These factors include: 1) the plaintiff's diligence in bringing the motion; 2) any undue vexatiousness on the plaintiff's part; 3) the extent to which the suit has progressed, including the defendant's efforts and expense in preparation for trial; 4) the duplicative expense of relitigation; 5) the adequacy of the plaintiff's explanation for the need to dismiss. *Id.*

A finding of plain legal prejudice, or a finding that the *Zagano* factors weigh in favor of dismissal with prejudice, would allow a court to dismiss a plaintiff's claim with prejudice pursuant to Rule 41(a)(2).

### A. Starling will not suffer plain legal prejudice if her claim is dismissed without prejudice.

Starling argues that dismissing the Government's claim without prejudice would create plain legal prejudice because she would lose her ability to collect attorney fees, litigation costs, and interest under CAFRA as a "substantially prevailing" party. (ECF 42 at 4). Assuming for the moment that CAFRA fees are unavailable if the claim is dismissed without prejudice, the issue here is whether the inability to "substantially prevail" under CAFRA – and therefore the inability to claim attorney fees, costs, and interest – constitutes plain legal prejudice.

The concept of plain legal prejudice is illustrated by the Supreme Court in *In re Skinner & Eddy Corp*, 265 U.S. 86 (1924) ("*Skinner*") where the Court held that a plaintiff's right to dismiss his complaint without prejudice was considered a matter of course in most cases, with the exception being where such dismissal would prejudice a defendant "in some other way than by the mere prospect of being harassed and vexed by future litigation of the same kind." *Id.* at 93. (citations and quotations omitted).

The "usual grounds" for denying a plaintiff's request to dismiss without prejudice exist where a case has progressed so far that the defendant is ready to seek affirmative relief on the pleadings and would suffer prejudice if forced to pursue that relief in a separate proceeding. *Id.*

The Second Circuit has noted that, in *Skinner*, "the [Supreme] Court was concerned about the plight of a defendant who is ready to pursue a claim against the plaintiff in *the same action* that the plaintiff is seeking to have dismissed." *Camilli*, 436 F.3d at 124. District Courts in the Second Circuit have further noted that this consideration primarily protects a defendant's ability to pursue existing counterclaims and affirmative relief in the same action the plaintiff is moving to dismiss. *See Lee v. Delta Airlines, Inc.*, No. 20CV01705WFKLGD, 2023 WL 9184679, at *10 (E.D.N.Y. Mar. 14, 2023) (citing *Ascentive LLC*, 2012 WL 1569573, at *2).

The Ninth Circuit has listed additional possible examples of legal prejudice, including "the loss of a federal forum, or the right to a jury trial, or a statute-of-limitations defense." *Smith v. Lenches*, 263 F.3d 972, 976 (9th Cir. 2001).

The Second Circuit has not addressed whether a civil forfeiture claimant's inability to "substantially prevail," and therefore seek fees, costs, and interest under CAFRA, constitutes plain legal prejudice. Courts nationwide have reached conflicting conclusions on this issue. *See, e.g., United States v. $4,183,402.74 in U.S. Currency*, No. 522CV138GLSTWD, 2023 WL 2329480 at *5 (N.D.N.Y. Mar. 2, 2023) ("inability to seek attorney's fees does not constitute plain legal prejudice"); *United States v. $107,702.66 in United States Currency Seized from Lumbee Guar. Bank Acct. No. 82002495*, No. 7:14-CV-00295-F, 2016 WL 413093, at *3 (E.D.N.C. Feb. 2, 2016) (finding that deprivation of right to seek fees under CAFRA was substantial legal prejudice); *United States v. Ito*, 472 F. App'x 841, 842 (9th Cir. 2012) ("The [claimants] suffered plain legal prejudice in losing their ability to move for attorney fees.");

11

*United States v. Thirty-Two Thousand Eight Hundred Twenty Dollars & Fifty Six Cents ($32,820.56) in U.S. Currency*, 106 F. Supp. 3d 990, 997 (N.D. Iowa 2015) ("Finding plain legal prejudice on [the basis of lost CAFRA fees] would necessarily presume that the party resisting voluntary dismissal would have prevailed on the merits if the case continued to a conclusion.").

The Court finds that the Northern District of New York's decision in *United States v. $4,183,402.74* is persuasive. That court found no plain legal prejudice resulting from the inability to pursue attorney fees under CAFRA after a dismissal without prejudice. It mentioned that the plain legal prejudice doctrine applies to the lost ability to pursue claims against the plaintiff in the same action. *United States v. $4,183,402.74*, 2023 WL 2329480 at *5. That aligns with the decisions in *In re Skinner & Eddy Corp.* and *Ascentive LLC*, which described the plain legal prejudice doctrine as applying to affirmative relief and counterclaims that would be "remitted to a separate action" if a case were dismissed without prejudice. 265 U.S. 86, 93 (1924); 2012 WL 1569573, at *2. The Second Circuit has not held that the loss of ability to pursue fees under CAFRA constitutes plain legal prejudice. The lack of binding precedent, coupled with the Northern District's reasoning and the Second Circuit's presumption in favor of granting dismissals without prejudice, guides this Court to find no plain legal prejudice.

### B. The *Zagano* factors also favor dismissal without prejudice.

Courts in the Second Circuit also weigh several factors when considering motions for voluntary dismissal without prejudice. *Zagano*, 900 F.2d at 12. As indicated above, these factors include: 1) the plaintiff's diligence in bringing the motion; 2) any "undue vexatiousness" on plaintiff's part; 3) the extent to which the suit has progressed, including the defendant's effort and expense in preparation for trial; 4) the duplicative expense of relitigation; 5) the adequacy of plaintiff's explanation for the need to dismiss. *Id.*

12

"These factors are not necessarily exhaustive and no one of them, singly or in combination with another, is dispositive." *Kwan v. Schlein*, 634 F.3d 224, 230 (2d Cir. 2011).

### 1. Factor 1: plaintiff's diligence

The first *Zagano* factor relates to the plaintiff's diligence in filing its motion to voluntarily dismiss. Generally, courts find diligence if a plaintiff filed within a "reasonable period of time" after the occurrence of the event that led the plaintiff to discontinue its action. *See Ascentive LLC*, 2012 WL 1569573, at *4. The overall length of litigation is therefore less relevant than the context in which the motion is brought. *See id.* (citing cases where motion to dismiss was brought multiple years into litigation and found to be diligent). Here, the Government was diligent because it filed its motion immediately following the Second Circuit's mandate that lifted the default and allowed Starling to file a late claim. A new development in the litigation prompted the Government to take its next step and it did so immediately.

Starling argues that the Government could have dismissed the action and returned her money at any time before the Second Circuit's mandate. (ECF No. 42). However, the Government had no reason to do so, as Starling was in default and the claim appeared meritorious in any event. Once the Second Circuit vacated the entry of default, the Government, which, by that time, had changed its policies concerning monetary limits for forfeiture actions, moved to dismiss.

The first *Zagano* factor favors dismissal without prejudice.

### 2. Factor 2: plaintiff's vexatiousness

"Vexatiousness refers to instances in which the case was brought to harass the defendant, or the plaintiff had ill-motive." *Paulino v. Taylor*, 320 F.R.D. 107, 110 (S.D.N.Y. 2017) (internal quotations and citations omitted). There is no evidence that this action was brought to harass

Starling. Starling's residence was searched by law enforcement during the execution of a search warrant in a narcotics investigation, and thousands of dollars in cash, the source of which Starling has not explained, was found in the apartment that Starling shared with the individual whom police observed selling narcotics. The Government maintains that it would win this case on the merits and explains that it is dismissing based on an internal policy change regarding the currency threshold for civil forfeitures. (ECF No. 41).

There is no evidence of ill-will or intent to harass by the Government. Factor two favors dismissal without prejudice.

### 3. Factor 3: progression of suit

"The standard for concluding that a suit has progressed far enough to weigh against dismissal [without prejudice] is high, and is usually satisfied only where substantial discovery, summary judgment motion practice, or trial preparation has occurred." *Paulino v. Taylor*, 320 F.R.D. at 110. Minimal litigation has occurred in this case. Although this action has been pending for multiple years, the litigation so far has involved Starling's attempt to have her default set aside. There has been no litigation on the merits, no discovery, no summary judgment motion practice, and the case is not ready for a trial.

Overall, the extent of litigation is minimal, and factor three favors dismissal without prejudice.

### 4. Factor 4: expense of relitigation

The fourth *Zagano* factor requires courts to determine the cost a defendant would incur if they were forced to relitigate the issue in a later proceeding. Unless the Government commences a new action against Starling's currency, there is nothing to relitigate. A second lawsuit is extremely unlikely because of the relatively small amount of currency, the fact that the

Government already returned the currency to Starling, and the circumstances of the Government's dismissal.

While Starling has certainly expended time and resources to this point, the relatively minimal progression of this suit weighs against dismissal with prejudice. Also, the ability to re-use prepared material in a hypothetical future case may also neutralize factor four. *See Ascentive LLC*, 2012 WL 1569573, at *6 (citing *A.V. by Versace, Inc. v. Gianni Versace S.p.A.*, 261 F.R.D. 29, 32–33 (S.D.N.Y. 2009). In the improbable event that the Government initiates a fresh pursuit of Starling's currency, that case would largely resemble this one. Starling would likely be able to translate at least some material from this case to that hypothetical future case.

Factor four weighs in favor of dismissal without prejudice.

### 5. Factor 5: adequacy of reason for dismissal

The Government asserts that it decided to dismiss this action because "[t]he amount of currency at issue no longer meets the current thresholds of the USAO-WDNY." (ECF No. 41 at 13).

The Court finds this to be an adequate reason for moving to dismiss, especially considering the relatively small amount of seized currency involved.

Factor five weighs toward dismissal without prejudice.

### C. This action is dismissed without prejudice

Accordingly, the Court concludes that Starling will not suffer plain legal prejudice if this action is dismissed without prejudice and that the *Zagano* factors weigh in favor of dismissal without prejudice. Therefore, the Government's motion to dismiss without prejudice is granted.

### III. Starling has not substantially prevailed under CAFRA because the case is dismissed without prejudice.

Under CAFRA, claimants who "substantially prevail" in civil forfeiture proceedings can recover reasonable attorney fees, litigation costs, and interest. *See* 28 U.S.C. § 2465 (b)(1). The issue is whether Starling has "substantially prevailed" where the Government's claim is dismissed without prejudice.

The Second Circuit has not directly addressed whether dismissal without prejudice means a claimant has "substantially prevailed." But it did indicate in *United States v. Khan*, 497 F.3d 204, 209 n.7 (2d Cir. 2007) that it would be inclined to interpret "substantially prevailed" based on the Supreme Court's interpretation of "prevailing party" in other fee-shifting statutes. The Second Circuit indicated that the decision in *Buckhannon Board & Care Home, Inc. v. West Virginia Department of Health & Human Resources*, 532 U.S. 598 (2001) would guide the analysis of whether a party has substantially prevailed and therefore whether they are entitled to fee shifting. *Khan*, 497 F.3d at 209.

In *Buckhannon*, the Supreme Court held that the term "prevailing party," as commonly used in federal fee-shifting statutes, applied only to those parties that achieved a "material alteration" of the legal relationship, which includes a court-ordered consent decree or judgment on the merits. 532 U.S. at 604 (citations omitted). Contrasted with this, the Court specifically commented on situations where one party achieves a desired result thanks to the other party's voluntary action, stating:

> A defendant's voluntary change in conduct, although perhaps accomplishing what the plaintiff sought to achieve by the lawsuit, lacks the necessary judicial *imprimatur* on the change. Our precedents thus counsel against holding that the term "prevailing party" authorizes an award of attorney's fees *without* a corresponding alteration in the legal relationship of the parties.

16

*Id.* at 605.

In the instant case, the Government returned Starling's currency and moved to voluntarily dismiss its forfeiture action. In a literal sense, Starling has prevailed: she got what she wanted. But in a legal sense, she has not "substantially prevailed." There has been no judgment on the merits, and no "material alteration" of the parties' legal relationship. Since the case is dismissed without prejudice, the Government – however unlikely it may be – could bring another action against the currency. This Court has not taken action to declare a change in the legal relationship between Starling, the Government, and the currency.

Starling argues that the cited language in *Khan* is non-binding dicta, and that the Second Circuit has left the door open to a more expansive interpretation of "substantially prevailing" under CAFRA. (ECF No. 42 at 9-10). In fairness, the Second Circuit has not squarely decided the meaning of this language in CAFRA. However, in *United States v. Davis*, 648 F.3d 84 (2011), the Second Circuit reiterated that its "interpretation of [CAFRA] should be informed by the case law applicable to similar fee-shifting provisions." *Davis* at 97 (citing *Khan*).

Starling also focuses on language in *Davis* that instructs the "substantially prevailing" inquiry to be conducted as follows: "identify the claimant's purpose for challenging the forfeiture," and then "determine whether the claimant achieved that purpose in some measurable way." *Id.* at 98. On its own, this language might seem to support the conclusion that Starling substantially prevailed because the Government dismissed its case and returned her currency. That was her purpose and she achieved it. But this language cannot be read alone. In the same section of the opinion, the Second Circuit stated that *Khan*'s guidance was relevant to the CAFRA calculus. *See Davis* at 97. So, while *Davis* spells out the practical application of the CAFRA fee-shifting provision, it still embraces, and is grounded in, the essence of *Khan* and

*Buckhannon*: a party has "substantially prevailed" where there has been a "material alteration" of the legal relationship.

Myriad courts, both in and out of the Second Circuit, have found that where a civil forfeiture action is dismissed without prejudice, the claimant has not "substantially prevailed." *See, e.g., United States v. Any & All Funds on deposit at JPMorgan Chase*, No. 12 CIV. 7530 GBD, 2013 WL 5511348, at *5 (S.D.N.Y. Oct. 2, 2013) ("The Government's voluntary dismissal of the complaint...does not result in a judicially sanctioned change in the legal relationship of the parties....Claimant cannot be considered to have substantially prevailed."); *United States v. 115– 98 Park Lane South et al.* 2012 WL 3861221 at *5 (E.D.N.Y. Sept. 5, 2012) (holding that when a court "dismisses the proceeding without prejudice pursuant to the Government's motion, the dismissal does not render the claimant a 'substantially prevailing' party entitled to attorney fees"); *United States v. $13,275.21, More or Less, in United States Currency*, No. SA–06–CA– 171–XR, 2007 WL 316455, at *4 (W.D.Tex. Jan. 31, 2007) (holding that dismissal without prejudice "return[s] the parties to the *status quo ante* and [does] not materially alter their legal relationship"); *United States v. Dougherty*, 486 F. App'x 621, 622 (8th Cir. 2012) (holding claimant "was not a substantially prevailing party for purposes of the fee-shifting provision in [CAFRA]" after Government's voluntary dismissal without prejudice because Government was free to refile against the property); *United States v. $32,820.56 in U.S. Currency*, 106 F.Supp.3d 990, 993–96 (N.D.Iowa May 22, 2015) (finding claimant did not substantially prevail after dismissal without prejudice and return of property); *United States v. Approximately $16,500.00 in U.S. Currency*, 113 F. Supp. 3d 776, 783 (M.D. Pa. 2015) (citing multiple cases in which district courts held claimants had not substantially prevailed because of dismissal without prejudice).

There has been no material alteration of the parties' legal relationship, nor can Starling claim to have prevailed on her legal theory, which was clearly unmeritorious. That is, Starling asserted that she was entitled to the return of the currency simply because her boyfriend was acquitted of his criminal charges, which is incorrect. *See, e.g., United States v. $16,162.00 in U.S. Currency, More or Less*, No. 90 CIV. 3061 (CSH), 1991 WL 73829, at *2 (S.D.N.Y. Apr. 18, 1991), *aff'd sub nom. United States v. $16,162 U.S. Currency*, 992 F.2d 319 (2d Cir. 1993) (stating that "a prior acquittal on the underlying criminal charge does not bar a civil forfeiture proceeding").

The Court finds that Starling has not substantially prevailed and is therefore not entitled to CAFRA fees.

## CONCLUSION

The Government is not entitled to voluntary dismissal by notice pursuant to Rule 41(a)(1)(A)(i) because Starling previously filed an answer *pro se*.

However, the Government's motion to voluntarily dismiss without prejudice pursuant to Rule 41(a)(2) is granted.

Claimant Starling is not entitled to attorney fees, litigation costs, and interest under CAFRA because she has not "substantially prevailed" where this case is dismissed without prejudice.

Date: July 21, 2025
Rochester, New York

Hon. Charles J. Siragusa
UNITED STATES DISTRICT JUDGE